JOSIAH MATZENBAUGH

*v.*

THE PEOPLE *ex rel.* Joseph Galloway, County Collector.

*Opinion filed December 18, 1901—Rehearing denied February 6, 1902.*

1. EVIDENCE—*declarations which are part of the res gestæ may be proved to show change of domicile.* Whether going from one State to another effects a change of domicile is largely a matter of intent, and any declarations of the party so connected with the act of going that they characterize the act are admissible in evidence as tending to establish the intent of the party.

2. SAME—*conviction of an offense not infamous cannot be shown to discredit witness.* Section 1 of the Evidence act, providing that no person shall be disqualified as a witness because of his conviction of any crime, but that such conviction may be proved for the purpose of affecting his credibility, means that such conviction must be of a crime which, at common law, would have rendered him incompetent to testify, and not of one punishable only by fine and imprisonment in the county jail.

3. SAME—*when declarations of agent are admissible against principal.* Declarations of an agent within the scope of her authority, and relating to a transaction then being performed by her as agent, are competent to be received in evidence against the principal.

4. TAXES—*exception to rule that taxable situs of credits is at owner's domicile.* An exception to the rule that the taxable situs of credits

is at the domicile of the owner arises when the evidence of indebtedness constituting the credits is in the hands of an agent of the owner for the purpose of enabling the agent to transact the business of the owner, of which business the credits constitute the subject matter. (*Hayward* v. *Board of Review*, 189 Ill. 234, distinguished.)

5. SAME—*when personal taxes are properly charged against real estate.* Personal taxes are properly charged against real estate where the tax-payer has gone from the State, and the collector is unable to find any personal property out of which such personal taxes can be made. (*Mt. Carmel Light Co.* v. *People*, 166 Ill. 199, explained.)

APPEAL from the County Court of Iroquois county; the Hon. FRANK HARRY, Judge, presiding.

DOYLE & CRANGLE, for appellant.

A. F. GOODYEAR, and J. W. KERN, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellant was summoned to appear before the board of review of Iroquois county, at its session in the year 1900, to answer why he should not make a report of personal property for assessment for that year. He appeared and pleaded that prior to the first day of April, 1900, he removed from the State of Illinois to the State of Texas, and at the same time removed his personal property (except $20,000 in government bonds, about fifteen head of cattle, a horse and an old buggy,) to the said State of Texas. The board of review decided he had notes and evidences of indebtedness liable to assessment in Iroquois county. He declined to make a statement of such credits for assessment, and the board, after taking into consideration the amount of his assessable credits for the previous year and items in reduction and addition thereto, arrived at an amount which, in the opinion of the board, he should have reported for assessment, and to this sum added a penalty of fifty per cent thereon and ordered an assessment against him to be made accordingly. The assessment was entered on the tax collector's book and the sum of $2218.51 extended as taxes thereon for the year 1900, and being unpaid and delinquent, the

treasurer and *ex officio* collector of the county determined to charge the same against real estate belonging to the appellant, and selected the north-east quarter of section 3, township 27, north, range 12, west of the second principal meridian, in said county,—a tract owned by the appellant,—for that purpose, and took the steps required by the statute to render said tract of land liable to judgment and order of sale to pay the said personal property tax.   To the application of the said county collector for such judgment and order of sale the appellant filed the following objections:   "On April 1, 1900, all the notes, mortgages, moneys and personal property owned and possessed by this objector (except cattle in this county, upon which he has paid the taxes,) were in the State of Texas, where they have ever since remained, and were not on said April 1, 1900, in the State of Illinois, and at the last mentioned day this objector had no notes, moneys or other personal property in Iroquois county and State of Illinois that he has not already paid the taxes thereon;  that said county collector was not authorized to charge said $2218.51 against said north-east quarter because no effort was made to collect said sum prior to charging the same against said north-east quarter. The county court, on a hearing, overruled the objections of appellant and awarded judgment as asked by the appellee collector of the county.   Objector has prosecuted this appeal to review the judgment.

The defense sought to be interposed was, that the appellant, who had been a resident of the county of Iroquois, in the State of Illinois, for a period of about thirty years, on the 20th day of March, 1900, removed from the State of Illinois and became a resident of the State of Texas, and that he took with him to his domicile in Texas the notes and other evidences of indebtedness assessed by the board of review for taxation, and that on the first day of April, 1900, his place of residence and the actual situs of the notes and evidences of indebtedness were in

the State of Texas. The treasurer and *ex officio* collector contended (1) that the domicile of the appellant was not changed from the State of Illinois, and that the alleged removal to Texas was but colorable and not real, and but a pretense to enable the appellant to avoid payment of the taxes on notes and other evidences of indebtedness of which the appellant was the owner; and (2) that the notes and other evidences of indebtedness were not removed from the State of Illinois, but were left in the charge of a Mrs. Fisher, a daughter of the appellant, in Watseka, in said Iroquois county; that Mrs. Fisher was the agent of the appellant, and as such agent had the actual possession of said notes and evidences of indebtedness and received payment of interest or principal as such agent, and had the notes, etc., in her possession to enable her to transact such affairs of business for the appellant.

The appellant, it is conceded, had resided in Iroquois county for nearly thirty years. He testified, however, that he did not reside there on the first day of April, 1900, but about ten days before that date went to the State of Texas with the intention of making his permanent home in that State. Many circumstances were proven which tended very strongly to support the view that the alleged change of his domicile was but a pretense to enable him to escape his fair burden of taxation. But we cannot affirm the judgment on this ground, for the reason the court rejected competent testimony offered by appellant bearing on the point and admitted incompetent matter in evidence bearing on the credibility of the appellant as a witness on his own behalf. The appellant sought, but the court refused to allow him, to prove his own declarations as to his intentions in going to Texas,—that his intent was to become a permanent resident of that State. Some of the declarations sought to be proven were incompetent because too remote, in point of time of utterance, from the act of leaving Illinois and going

to Texas, but others of the declarations offered to be proven were of the *res gestœ* of the removal. Whether going from one State to another would effect a change of domicile is largely a matter of intent. The declarations of the party are at times admissible to show the intent in making the journey. The rule is thus stated by Mr. Greenleaf in his work on Evidence (vol. 1, sec. 108): If one "changes his actual residence or domicile, or is upon a journey, or leaves his home, or returns thither, or remains abroad, or secretes himself, or, in fine, does any other act material to be understood, his declarations made at the time of the transaction, and expressive of its character, motive or object, are regarded as 'verbal acts, indicating a present purpose and intention,' and are therefore admitted in proof like any other material facts. So upon inquiry as to the state of mind, sentiments or dispositions of a person at any particular period, his declarations and conversation are admissible. They are parts of the *res gestœ.*" Any declarations of appellant which were so connected with the act of going from Illinois to Texas that they should have been regarded as qualifying or characterizing the act were admissible in evidence as tending to establish the intent which actuated the appellant at the time. The court erred in refusing to permit such declarations to be given in evidence.

The court also erred in permitting the appellee to produce in evidence the record of the conviction of the appellant for making and delivering to the assessor, in the year 1899, a false and fraudulent schedule of his property for taxation, with intent to defeat the law in relation to the assessment of property for taxation. It was offered for the purpose of serving to discredit the testimony of the appellant, and was thought by the court to be admissible for that purpose. It is true, section 1 of chapter 51 of the Revised Statutes, entitled "Evidence," etc., provides that no person shall be disqualified to give testimony as a witness because of his conviction of any

crime, but that such conviction may be given in evidence for the purpose of affecting the credibility of the witness. The proper construction of this section of the statute is, that the rule of the common law that a person who has been convicted of a crime which rendered him infamous should be denied the right to give testimony is abolished, but that the conviction of the crime may be given in evidence for the purpose of discrediting the testimony given by such a person as a witness. The offense of which the appellant was convicted is not of the character or grade of crime deemed infamous at the common law or under our statutes. It is a statutory offense, punishable by fine and imprisonment in the county jail. (Hurd's Stat. 1899, chap. 120, par. 339.) Nor is it of the class of offenses denominated *crimen falsi*, which were deemed infamous at common law. *Crimen falsi*, according to the better opinion, does not include all offenses which involve a charge of untruthfulness, but only such as injuriously affect the administration of public justice, such as perjury, subornation of perjury, suppression of testimony by bribery or conspiracy to procure the absence of a witness, or to accuse one wrongfully of a crime, or barratry, or the like. (1 Greenleaf on Evidence, sec. 373; 16 Am. & Eng. Ency. of Law,—2d ed.—246, 247.) The enactment of said section 1 of our statute on evidence has no effect to authorize the introduction of proof of the conviction of the witness of an offense that would not have rendered him incompetent to testify in the absence of the statute. *Bartholomew v. People*, 104 Ill. 601.

The evidence relied upon to defeat the contention of the appellant that he had actually changed his domicile, and on the first day of April, 1900, was a citizen of the State of Texas, though strong, is not sufficient to justify us in saying it should prevail in the face of these erroneous rulings.

But upon the other branch of the case we think the evidence warranted the judgment. Even if appellant be-

came, in good faith, a resident of the State of Texas on the first day of April, 1900, the evidence sufficiently demonstrated that the notes and evidences of indebtedness assessed for taxation were not removed from this State, but remained in the hands of his daughter, Mrs. Fisher, as his agent, at her home in Watseka, Illinois, to uphold the judgment of the county court. The appellant testified he took his notes, securities, etc., with him to Texas in two "satchels," neither of which was locked but merely fastened with straps; that he did not "check" either of them as baggage. He would not state the amount of the securities or even venture an estimate, further than to say he did not believe the aggregate thereof amounted to $150,000, and testified that on arriving at his destination in the State of Texas he put the notes and securities in the vault of the First National Bank of Beeville, Texas, and has kept them there ever since, except when he sent some of the notes to his daughter, (Mrs. Fisher,) in Watseka, Illinois, for payment. Mr. Reeder, who accompanied the appellant on his trip to Texas and who was produced as a witness in behalf of the appellant, on cross-examination testified that the appellant had two valises on the journey, but denied the statement of the appellant that he (the appellant) kept the valises in his own care and possession on the journey. Mr. Reeder testified one of the valises (the smaller one) contained brushes, combs, etc., night clothing and other wearing apparel, and that the appellant carried it, but that he checked the other, the larger of the valises; that the larger grip, which was checked, got misplaced and occasioned some trouble and bother in tracing and recovering it. It is indisputable that appellant owned notes secured by mortgages, and other credits, in the aggregate amount of not less than $100,000,—probably $150,000; and the contradiction by Mr. Reeder of appellant's statement as to the manner in which these evidences of this indebtness were taken to Texas, and the very great improb-

ability that the valise which appellant "checked" and which was only fastened by a strap contained credits of such great value, could but have influenced the court to discredit the statement of appellant that he took these credits with him to Texas.

That the notes and other securities were not removed to Texas, but remained in Illinois, seemed well established by other proof. The appellant testified he returned to Watseka, Illinois, in May, 1900, after going to Texas in March of the same year, and that he brought the two valises back with him but that he brought none of the notes or securities back with him. Decatur Morgan, a witness for the appellee collector, testified that soon after appellant came back from Texas he paid him the amount he was indebted to appellant on a note, and that appellant on the same day delivered him the note. John Gillan testified that, acting for a Mr. Eagle, he paid to Mrs. Fisher (appellant's daughter) a past-due interest coupon note, being the interest on a principal note which Mr. Eagle owed to the appellant; that he did not think Mr. Eagle ought to be charged with interest on the coupon note after its maturity, because the appellant, to whom it was due, was away from Illinois and Eagle could not find him to make the payment when it was due, but Mrs. Fisher required the interest on the coupon to be paid, and said to him: "Well, if he (Eagle) had gone to the First National Bank (Watseka) they could have told him that she attended to those matters when he (Matzenbaugh) was gone, and to go to her, and that he would have to pay from the first of November down, on the interest." It was not objected that this statement of Mrs. Fisher was but hearsay testimony, and incompetent. It was well established that Mrs. Fisher was the agent of the appellant. She was then performing an act as agent and within the scope of her power in that capacity, and the declarations were in relation to the transaction then being performed by her as agent. Her declarations were

competent to be received in evidence against the appellant. (1 Am. & Eng. Ency. of Law,—2d ed.—pp. 693, 694.) Mr. Gillan then testified he paid the coupon note and the interest thereon to Mrs. Fisher, and that she delivered the coupon note to him to be delivered to Mr. Eagle. Mr. Anderson testified that he and his brother owed appellant several notes, aggregating about $14,000; that he desired to see the notes during the time appellant was absent in Texas; that he called on Mrs. Fisher and made known his wants, and that she had all the notes, produced them and allowed him to inspect them.    Mr. McGill, president of the First National Bank of Watseka, testified that during appellant's absence in Texas parties would make inquiry at the bank about their notes to appellant and that they were always' referred to Mrs. Fisher; that such parties, at times, after being so advised, would draw checks on witness' bank and go away and return with their notes and mortgages which they had paid off.    It was also proven that during the appellant's absence in Texas a number of loans were made of his funds through Mrs. Fisher, as his agent; that she made collections for him and made remittances, and paid the taxes on a number of farms owned by him in Iroquois county.    She was his agent, and the court was amply justified in believing she had his notes and securities in her possession in Watseka, Illinois, for the purpose of enabling her to transact the business of collecting and loaning money in Iroquois county for him.

The general rule is, the taxable situs of credits is the domicile of the owner.  But an exception to the rule arises when the instruments which evidence the right of the owner to receive the indebtedness which constitutes the "credits" are in the hands of an agent of the owner for the purpose of enabling such agent to transact the business of the owner, in which business the credits constitute, as it were, the subject matter or stock in trade of such business. (*Hayward* v. *Board of Review,* 189 Ill. 234;

*Goldgart* v. *People*, 106 id. 25.)  Section 1 of chapter 120 of the Revised Statutes, entitled "Revenue," declares, in a general way, what property shall be liable to assessment for taxation.  Clause 2 of the section is as follows: "All moneys, credits, bonds or stocks and other investments, the shares of stock of incorporated companies and associations, and all other personal property, including property *in transitu* to or from this State, used, held, owned or controlled by persons residing in this State."  Section 9 of the act reads as follows:  "The property of manufacturers and others, in the hands of agents, shall be listed and assessed at the place where the business of such agent is carried on."

Regardless of the insistence of appellant that he had in good faith changed his domicile from Illinois to Texas, the situs of his notes and securities, which remained in the hands of his agent in Illinois for the purpose of enabling such agent to successfully and conveniently continue the prosecution of the business of loaning money, in which appellant had long been engaged, was not changed, but such notes and securities were subject to taxation under the operation of the laws of the State of Illinois. The distinction between this and the case of *Hayward* v. *Board of Review*, 189 Ill. 234, is that in the latter case the domicile of the owner was in Indiana and the proof did not show that the situs of the credits was in Illinois.

It is contended that it appeared the appellant owned some cattle in Iroquois county and had money in one or more of the banks in that county, and that the taxes on these credits could have been made by proper efforts on the part of the collector of taxes, without resorting to the real estate of appellant.  Section 255 of the Revenue act (Rev. Stat. p. 899,) provides that the taxes on personal property shall not be charged against real estate "except in cases of removals, or where the said tax can not be made out of the personal property."  It seems some cattle in the possession of a tenant on one of a num-

ber of farms owned by the appellant in Iroquois county belonged to appellant, but nothing appeared to indicate to the officials but that the cattle belonged to the person who had them in possession. The evidence of the collector was, in substance, that he did not know, and that he made inquiry but could not learn, of any property belonging to appellant which could be seized and sold to pay the taxes on these credits. The proviso to said section 255 of the Revenue act, so far as it relates to the matter in hand, is as follows: "*Provided,* that judgment against real property, for non-payment of taxes thereon, shall not be prevented by showing that the owner thereof was possessed of personal property subject to distraint."

The case of *Mt. Carmel Light Co.* v. *People,* 166 Ill. 199, which is relied on by appellant to support his contention that the failure of the collector to levy upon or distrain the personalty defeats any attempt to collect the taxes by a sale of realty, was submitted upon a stipulation to the effect that the tax there sought to be collected by sale of the land was levied on personalty which was still in the possession of the party to whom it was assessed and could have been seized at any time by the collector, but that he made no effort to collect the personal property tax beyond demanding payment thereof. We held, under such state of the case, the collector was not authorized to charge the personal tax against the real estate. The decision, in substance, is that the collector cannot, under our statute, as a matter of mere choice or preference on his part, elect to charge the personal taxes against the real estate. In the case at bar the *ex officio* collector made an effort, in good faith, to collect the personal taxes from personalty. No intervening right of others in the land exists, and the collector did not err in charging the personal taxes against the land.

The judgment of the county court is affirmed.

*Judgment affirmed.*