[Sac. No. 3055. In Bank.—January 27, 1922.]

## THE PEOPLE, Respondent, v. FORD MOTOR COMPANY (a Corporation), Appellant.

[1] TAXATION—FOREIGN CORPORATION—INTRASTATE BUSINESS.—Since the exercise by a foreign corporation of the power of engaging in intrastate business in this state is a franchise in this state not exempt under the laws of the United States and not excepted in the state constitution, it is property taxable under section 14 of article XIII of the constitution.

[2] ID.—CONSTITUTIONAL LAW—INTERPRETATION OF SECTION—REPORTS OF REVENUE COMMISSION.—In view of the definite and unambiguous language of section 14 of article XIII of the constitution relating to the taxation of franchises of corporations, it is not permissible to go outside of the constitution itself and consult the reports of the revenue commission which proposed the general system of taxation ultimately embodied in such section, for the purpose of interpreting the meaning of the section.

[3] ID.—RECOVERY OF FRANCHISE TAX—PLEADING—COMPLAINT—GENERAL DEMURRER.—In an action by the state against a foreign corporation for the recovery of a franchise tax, the complaint is sufficient as against a general demurrer, notwithstanding the use of language susceptible of the construction that the tax was levied on the right to do business in this state rather than the actual exercise of such right, where it is apparent from the pleading as a whole that it was not the mere right to do business, but the actual exercise of the right within the state which constituted the property taxes.

[4] ID.—ADMISSION OF ANSWER—INTRASTATE BUSINESS—DENIALS OF FRANCHISE—PROPER ELIMINATION.—Where in such action the defendant admitted in its answer and at the trial that it was doing an intrastate business in this state, it was not error to strike from the pleading the denials that it had or possessed a franchise in this state.

[5] ID.—METHOD OF VALUATION OF FRANCHISE—PROCEDURE OF OTHER YEARS.—In such action, conceding that the defendant was entitled to examine the members of the board of equalization concerning the method pursued in arriving at the value of the property to be taxed, the methods followed in other years and the rate at which property in general was taxed for purposes other than state purposes was neither relevant nor material.

1. Taxation of corporate franchises, notes, 131 Am. St. Rep. 862; 7 Ann. Cas. 518.

[6] ID.—PROPORTIONATE DIVISION OF CORPORATE EXCESS — PROPER
METHOD OF VALUATION.—The fixing of the amount of the corpo-
rate excess or intangible property of a foreign corporation doing
an intrastate business in this state by dividing the entire excess
in the proportion that the business in this state bears to the en-
tire business is not violative of the interstate commerce clause and
of the fourteenth amendment of the federal constitution.

APPEAL from a judgment of the Superior Court of
Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. F. Williamson and Edward Elliott for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena,
Deputy Attorney-General, for Respondent.

LENNON, J.—The state of California instituted the pres-
ent action against the Ford Motor Company for the recovery
of a franchise tax for the fiscal year 1915–16, in the sum
of twenty-four thousand dollars, and accrued delinquency
penalties amounting to three thousand dollars. Judgment
was rendered in favor of the state and defendant appeals.

Upon this appeal the first question for consideration is
whether the constitution and laws of this state authorize the
imposition of a franchise tax upon the defendant, a cor-
poration organized under the laws of the state of Michigan
and transacting both interstate and intrastate business in the
state of California. Article XIII, section 1, of the consti-
tution of California provides: "All property in the state
except as otherwise in this constitution provided, not ex-
empt under the laws of the United States shall be taxed in
proportion to its value, to be ascertained as provided by
law, or as hereinafter provided. The word 'property' as
used in this article and section is hereby declared to include
. . . franchises . . . " Section 14 of the same article reads
in part: "(d) All franchises, other than those expressly
provided for in this section, shall be assessed at their actual
cash value, in the manner to be provided by law . . . "
These sections of the constitution in effect authorize a tax
upon all franchises in this state not exempt under the laws
of the United States, unless otherwise expressly provided in
the constitution.

[1]   This court has held that, by the use of the term "franchises" in these sections of the constitution, it is intended to provide for the taxation of the intangible property of the corporation. (*Miller & Lux* v. *Richardson,* 182 Cal. 115 [187 Pac. 411].) The *right to be* a corporation, or *to do business as* a corporation, is a franchise which ordinarily has its *situs* at the place where the home office of the corporation is situated but, when a corporation engages in business in a state other than the state wherein it was chartered, the actual exercise of the power to engage in business creates valuable intangible property in the foreign state where the business is transacted. In other words, the *actual exercise* of the power to do business is also a franchise and such a franchise has a substantial existence in every state where the business is transacted. (*People* v. *Alaska Pac. Steamship Co.,* 182 Cal. 202 [187 Pac. 742].) In so far as this franchise, or intangible property, consists of the exercise of the power to transact intrastate business within the foreign state, it may be taxed by that state. (*Adams Express Co.* v. *Ohio,* 166 U. S. 185 [41 L. Ed. 965, 17 Sup. Ct. Rep. 604, see, also, Rose's U. S. Notes] ; *People* v. *Alaska Pac. Steamship Co., supra.*) It follows that, if a foreign corporation is actually exercising its right to do business in this state and is doing an intrastate business, it thereby has in this state taxable intangible property. Since the exercise by a foreign corporation of the power of engaging in intrastate business in this state is a franchise in this state not exempt under the laws of the United States and not excepted in the state constitution, it is property taxable under section 14, article XIII, of the constitution.

[2]   Appellant contends that the revenue commission which proposed the general system of taxation ultimately embodied in section 14, article XIII, of the constitution did not contemplate that foreign corporations should pay a tax on franchises in the sense of "corporate excess," that is, a property tax, but that subdivision d of that section, above quoted, refers only to domestic corporations. However, the language of the constitutional section is definite and unambiguous in this respect, and it is not permissible to go outside of the constitution itself and consult the reports of the commission and other sources for the purpose of construing words or phrases the meaning of which, as used in the con-

stitution, admits of no doubt.  As stated in *Pacific G. & E. Co.* v. *Roberts,* 176 Cal. 183, 192 [167 Pac. 845, 848]: "While the report is very valuable and enlightening upon the subject treated, we cannot read it into the constitution for the purpose of defining words of plain meaning.  If we were to be governed by contemporaneous construction, we would have to consider also that given by the legislature to the fourteenth section of article XIII shortly after its adoption."  This interpretation is to be found in the Statutes of 1911, page 530, chapter 335, section 5, where the legislature provided: "All franchises . . . shall be assessed at their actual cash value . . . These franchises shall include the actual exercise of the right to be a corporation and to do business as a corporation under the laws of this state and the actual exercise of the right to do business as a corporation in this state when such right is exercised by a corporation incorporated under the laws of any other state or country."

[3]  The next contention is that the court committed reversible error in overruling defendant's demurrer to the complaint.  The complaint is claimed to be defective in that it alleges that the tax was levied on the "right to do business in the state of California," rather than the "actual exercise of the right to do business in the state of California."  It is true that there is language in the complaint susceptible of the construction contended for by appellant, arising from the fact that the complaint refers to both the "right to do business" and the "exercise of the right to do business" as a franchise.  This creates some confusion and ambiguity.  However, it is apparent from the complaint as a whole that it was not the mere right to do business, but the actual exercise of that right within this state, which constituted the property taxes, and the complaint was, therefore, sufficient as against an attack by general demurrer.

[4]  Likewise, no error was committed by the court in striking from appellant's answer the denials that it had or possessed a franchise in the state of California.  Appellant admitted in its answer and at the trial that it was doing an intrastate business in this state and, in view of what we have previously said, this was tantamount to an admission that the defendant had a franchise taxable in this state. Under the circumstances, the denials in question were merely

incorrect conclusions of law which served but to confuse the
issues and were properly eliminated.

[5]   The third alleged error in law to which appellant
directs attention is the action of the court in sustaining ob-
jections to a number of questions put to certain witnesses by
appellant.  In this connection appellant relies upon but one
proposition of law, namely, that the corporation was entitled
to examine the members of the board of equalization con-
cerning the method pursued by them in arriving at the value
of the property to be taxed.  Conceding, for the purpose of
discussion, this proposition to be correct, it is of no avail
to appellant for it does not appear that appellant was pre-
vented from ascertaining the method by which the value of
appellant's franchise was determined.  By some of the ques-
tions appellant sought to ascertain the methods of valuation
followed by the board in other years and the rate at which
property in general was taxed for purposes other than state
purposes.  These matters were clearly irrelevant and imma-
terial, for the validity of the 1915 state tax on appellant's
franchise was the sole question before the court, and in this
connection the methods of valuation followed in previous
years or the rates employed in imposing taxes of a different
nature were of no moment.  It appears that the tax in suit
had been originally computed at the sum of twenty-nine
thousand seven hundred dollars, and that the board had
thereafter, upon the hearing of an application by the appel-
lant for a reduction, reduced the tax to twenty-four thou-
sand dollars, which amount was finally fixed by the board.
Appellant sought to question the witnesses as to the method
by which the board fixed the sum of twenty-nine thousand
seven hundred dollars as the amount of the tax in the first
instance, and now complains that the court erroneously sus-
tained an objection to such questions.  Conceding that the
method adopted by the board in fixing the tax at the higher
sum was material and relevant to an inquiry as to the
method by which they arrived at the tax which was finally
fixed, still the record shows that the trial court did not, as
counsel contends, sustain the objection to the questions re-
ferred to.  On the contrary, the record shows that the ob-
jection was ultimately overruled, and that the court per-
mitted every question propounded by counsel for appellant
upon that phase of the case to be answered.  No prejudice

was suffered by appellant in the sustaining of objections to any of the hypothetical questions concerning method of valuation, for elsewhere in the record it appears that the witnesses were permitted to testify as to the general method followed in determining the value of appellant's franchise in 1915. Nor was any prejudicial error committed in sustaining objections to questions regarding the uniform application of the method, for these questions were but a repetition of previous questions in answer to which the witness testified that all similar corporations similarly situated were treated in the same way as the appellant corporation.

[6] Appellant's final attack is directed against the method of assessment. That method was as follows: The board first determined the value of the total assets of the corporation, that is, the capital stock and securities, from which it deducted the value of the tangible property of the corporation. The value of the corporate excess in California was then determined by taking that percentage of this difference (which was the total corporate excess) represented by the ratio between the intrastate business in California and the total business of the corporation. It is claimed that this method of allocation is violative of the interstate commerce clause and of the fourteenth amendment of the United States constitution.

This contention is answered by the United States supreme court in the case of *Horn Silver Min. Co.* v. *New York,* 143 U. S. 305 [36 L. Ed. 164, 12 Sup. Ct. Rep. 403, see, also, Rose's U. S. Notes]. In this case the corporation was organized in the state of Utah and was doing some intrastate business, it appearing, however, that the great bulk of its business and capital was outside of the state of New York. In discussing the validity of a tax imposed by New York upon "corporate franchise or business," the United States supreme court said: "The counsel for the appellant objects that the statute of New York is to be treated as a tax law, and not as a license to the corporation for permission to do business in the state. Conceding such to be the case we do not perceive how it in any respect affects the validity of the tax. However it may be regarded, it is the condition upon which a foreign corporation can do business in the state, and in doing such business it puts itself under the law of the state, however that may be characterized. . . . It

is true, the greater part of the business of the company was done out of the state, and the greater part of its capital was also without it, but the statute of New York does not require that the whole business of a foreign corporation shall be done within the state in order to subject it to the taxing power of the state. It makes, in that respect, no difference between home corporations and foreign corporations, as to the franchise or business of the corporation upon which the tax is levied, provided it does business within the state, as such corporation. There seems to be a hardship in estimating the amount of the tax upon the corporation, for doing business within the state, according to the amount of its business or capital without the state. That is a matter, however, resting entirely in the control of the state, and not a matter of federal law, and with which, of course, this court can in no way interfere.''

Upon the authority of that case, the validity of the tax here attacked seems clear, for the method employed in fixing the amount of the corporate excess or intangible property situated in this state called for a division of the entire excess in the proportion that the California business bore to the entire business, a method which would doubtless be characterized as fairer than that pursued and upheld in the Horn case.

The argument with respect to the application of the fourteenth amendment of the United States constitution is further answered by the United States supreme court in the case of *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113 [65 L. Ed. 50, 41 Sup. Ct. Rep. 45]. In this case the state of Connecticut had taxed a Delaware corporation operating within its borders and the court said: ''The legislature, in attempting to put upon the business its fair share of the burden of taxation, was faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders. It, therefore, adopted a method of apportionment which, for all that appears in this record, reached, and was meant to reach, only the profits earned within the state. 'The plaintiff's argument on this branch of the case,' as stated by the supreme court of errors, 'carries the burden of showing that forty-seven per cent of its net income is not reasonably attributable, for purposes of taxation, to the manufacture of products from

the sale of which eighty per cent of its gross earnings was derived after paying manufacturing costs.' The corporation has not even attempted to show this." Similarly, in the instant case, there is no showing that the percentage of the corporation's total intangible property apportioned to the state of California was an arbitrary or unreasonable allocation.

The judgment is affirmed.

Waste, J., Lawlor, J., Sloane, J., Shurtleff, J., Wilbur, J., and Shaw, C. J., concurred.

Rehearing denied.

All the Justices concurred.