(No. 23867.—

WHEELOCK, LOVEJOY & CO. INC. Appellant, *vs.* JOSEPH L. GILL, County Collector, Appellee.

*Opinion filed February 12, 1937—Rehearing denied June 16, 1937.*

WILSON, J., dissenting.

ADAMS, NELSON & WILLIAMSON, (ROBERT MCCORMICK ADAMS, and PAUL S. DAVIS, of counsel,) for appellant.

THOMAS J. COURTNEY, State's Attorney, (HAYDEN N. BELL, JACOB SHAMBERG, and MANUEL E. COWEN, of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

Do the revenue laws of Illinois authorize the taxation of a portion of the net credits and other intangibles of a foreign corporation? This appeal from the circuit court of Cook county raises no other question.

The appellant, a Massachusetts corporation and licensed to do business in Illinois, has maintained a branch office in Chicago for many years. It has regularly paid taxes upon all tangible property located and used in this State, including machinery, equipment and merchandise. In preparing the assessment books for 1934 the county assessor of Cook county placed two additional assessments of $10,000 each against appellant on its credits and "franchise." It was stipulated that if net credits payable solely in Massachusetts were assessable in Illinois, the assessment of $10,000, in the judgment of the assessor, was the fair cash value "of that portion of the net credits arising out of and produced by the Chicago office of complainant corporation." In arriving at the value of this so-called "franchise" the assessor used a weighted average of earnings to which a capitalization factor was applied, and to this value applied a factor representing the ratio of appellant's Cook county business to its total business in the United States. This assessment was denominated by the assessor as an assessment against the "franchise" of the corporation, and it was further stipulated that it consisted, in the assessor's judgment, "of that portion of the trade-marks, copyrights, patents, good will, capitalized earning power and franchise allocated to the Chicago office on the basis of the proportion of business produced by the use of said intangibles at the Chicago office of the complainant corporation."

The evidence shows that out of appellant's 1934 sales of approximately $1,100,000, a total of about $180,000, both cash and credit, or approximately sixteen per cent, was made through the Chicago office. A small bank account was maintained at the Chicago branch as a petty cash account, but all bills arising from sales or other activities of the Chicago office were payable at the home office in Cambridge, Massachusetts. All invoices from sales arising through the Chicago office contained a direction to pur-

chasers to "send all remittances to 128 Sidney street, Cambridge, Massachusetts." Appellant paid to the Secretary of State the usual fee required for admission of a foreign corporation and the usual franchise tax required by the Business Corporation act from all foreign corporations admitted to do business in Illinois. For the year 1934 it was also assessed the sums of $929 for machinery and equipment and $21,910 for merchandise on hand. The suit in the lower court was a proceeding in equity to enjoin the county collector from collecting the additional tax on intangibles, and the suit was there dismissed for want of equity.

The authority of the General Assembly to levy general property taxes in this State is found in section 1 of article 9 of the Illinois constitution, which provides: "The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property; * * * but the General Assembly shall have power to tax * * * persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates."

By section 1 of the Revenue act of 1872 the General Assembly has provided for the taxation of the following property:

"First: All real and personal property in this State.

"Second: All moneys, credits, bonds or stocks and other investments, the shares of stock of incorporated companies and associations, and all other personal property; including property *in transitu* to or from this State, used, held, owned or controlled by persons residing in this State.

"Third: The shares of capital stock of banks and banking companies doing business in this State.

"Fourth: The capital stock of companies and associations incorporated under the laws of this State," etc.

The first provision of section 1 relates to the taxation of real and personal property and may be regarded as broad enough to cover all property of every character, tangible or intangible, in this State. (*People* v. *National Box Co.* 248 Ill. 141; *People* v. *Chicago Union Lime Works Co.* 361 id. 304.) The express provision of the second subdivision is, that personal property shall be taxed, not if it is used or held in this State but if it is "used, held, owned or controlled by persons residing in this State." By this provision the legislature has followed the maxim *mobilia sequunt personam*—that the situs of personal property follows the domicile of the owner. This was the common law rule, and its principles have been recognized by many decisions of this court. (*In re Appeal of Borden,* 208 Ill. 369; *Ellis* v. *People,* 199 id. 548; *Mills* v. *Thornton,* 26 id. 300; *Illinois Central Railroad Co.* v. *Carr,* 302 id. 172; *People* v. *Culver,* 304 id. 566.) Thus, it was said in *Illinois Central Railroad Co.* v. *Carr, supra:* "As a general rule, incorporeal personal property has no locality but accompanies the person of the owner wherever he goes. But that is merely a rule of the common law adopted for convenience, only, and it may be changed by the legislature in the exercise of its judgment. The actual *situs* of personal property having a visible and tangible existence will determine the town or district in which it may be taxed without reference to the domicile of the owner, but intangible property for the purpose of taxation, in the absence of a statute, is generally held to be situated at such domicile." This rule has won unqualified acceptance when applied to the taxation of intangibles. *Blodgett* v. *Silberman,* 277 U. S. 1, 9, 10; *Baldwin* v. *Missouri,* 281 id. 586.

We are unable to accept the argument of appellee that the language in section 1 of the Revenue act is broad enough to cover the intangible property owned by the corporation in Massachusetts, based upon that portion of its trade-

marks, copyrights, patents, good will, capitalized earning power and franchise used in Illinois, thus permitting a portion of its business produced by the use of these intangibles to be taxed in Illinois. The doctrine that intangibles may be taxed at their "business location," as distinguished from the legal domicile of their owner, has found general acceptance, but has never been applied to a case of the kind before us. This doctrine has usually been applied to obligations to pay money, acquired in the course of a localized business, (*Wheeling Steel Corp.* v. *Fox,* 298 U. S. 203, 212, 213,) and to shares of corporate stock which, because of their use in the business of the owner, may be treated as localized, for the purposes of taxation, at the place of business. (*First Nat. Bank* v. *Maine,* 284 U. S. 312, 331; *First Bank Stock Corp.* v. *Minnesota,* 81 U. S. (L. ed.) 644.) No case has been cited, and we have found none, which extends this doctrine to net credits and franchises of a foreign corporation. No specific statutory provision can be found which would warrant the imposition of such a tax, nor is any language used in the Revenue act by which such authority can be fairly implied. If there is any doubt whether the language of an act was intended to authorize the taxation of certain property the language will not be extended beyond its clear import in order to make the property subject to the tax. In case of doubt such statutes are construed most strongly against the government and in favor of the tax-payer. *Fidelity Co.* v. *Board of Review,* 264 Ill. 11.

No cases have been cited by appellee holding that credits owed by a resident to a non-resident and payable to such non-resident outside of this State are taxable here. The case of *Matzenbaugh* v. *People,* 194 Ill. 108, cited by appellee on the subject of net credits, is not in point, as the credits there involved were in the hands of an agent who carried on a money-lending business in Illinois and kept the notes evidencing the indebtedness in this State. The Illi-

nois statute (Revenue act of 1872, sec. 6,) expressly requires that property held in the hands of an agent who carries on the business of money lending shall be taxable in Illinois. Likewise, in *Goldgart* v. *People*, 106 Ill. 25, it was held that credits owned and held by residents of New York were not taxable in Illinois even though loans were made in Illinois. To the same effect are *People* v. *Davis*, 112 Ill. 272, and *Reat* v. *People*, 201 id. 469. In other cases this court has adhered to the same principle. In *In re Appeal of Union Tank Line Co.* 204 Ill. 347, at page 351, it was said: "Appellant's principal office is in New Jersey. Its cars, when not in use, are returned to that State. All its business affairs are regulated and managed from that office, except the mere matter of tracing the cars and some minor details. Bills due it are payable at that office, and, in fact, its domicile is in the State of New Jersey. Its personal property has its situs there and is there subject to taxation by that State in return for the protection afforded by that State to the company. * * * That appellant's credits, which it is not disputed were payable at its home office in New Jersey, are not subject to assessment here, is settled by the case of *Scripps* v. *Board of Review,* 183 Ill. 278, and cases cited." Even though a portion of the sales or other transactions occurred in Illinois, it is clearly shown that the credits are payable outside of this State. The mere fact that credits arose in Illinois is not a basis for taxation. (*Fidelity Co.* v. *Board of Review, supra.*) In *Western Union Telegraph Co.* v. *Lieb,* 76 Ill. 172, an attempt was made to tax the capital stock and franchise of a corporation doing business in this State but incorporated under the laws of another State. This court (1875) then held that the legislature had restricted the assessment of capital stock solely to those corporations created under the laws of this State, and added: "If it shall be thought necessary to tax such corporations otherwise than upon their tangible prop-

erty, additional legislation expressly authorizing such taxation must be had."

Much reliance is placed by appellee in the holding of *Adams Express Co.* v. *Ohio,* 166 U. S. 185, and *People* v. *Ford Motor Co.* 188 Cal. 8, 204 Pac. 217. In the *Adams Express Co. case* the Federal Supreme Court specifically pointed out that the question before it was limited to the constitutionality of the Revenue act of Ohio, (Nichols law,) under which the assessments against the franchise were made. As stated in its opinion, the Supreme Court there assumed that the assessments complained of were made pursuant to the rules of appraisement established by the Nichols law as construed by the Supreme Court of Ohio, and the question was whether the Nichols law was valid under the Federal constitution. In the *Ford Motor Co. case, supra,* the Supreme Court of California was likewise concerned with the validity of a California statute which authorized the assessment of all franchises, whether exercised by a domestic corporation or "by a corporation incorporated under the laws of any other State or country." Neither of these decisions is therefore controlling in the present case, as there is no statute authorizing the assessment of intangibles or franchises of foreign corporations in Illinois.

It is our opinion that the assessor of Cook county acted without statutory authority in assessing a tax upon the credits, franchise or other intangible property of the appellant corporation.

The decree of the circuit court is therefore reversed and the cause is remanded, with directions to grant an injunction against the collection of the tax in question.

*Reversed and remanded, with directions.*

Mr. Justice Wilson, dissenting.