[L. A. No. 4631. In Bank.—February 2, 1917.]

## BULLFROG GOLDFIELD RAILROAD COMPANY (a Corporation), Petitioner, v. FRANK C. JORDAN, Secretary of State of the State of California, Respondent.

CORPORATIONS—RAILROAD DOING INTRASTATE BUSINESS—LICENSE TAX—GENERAL CORPORATE AFFAIRS TRANSACTED IN CALIFORNIA.—A railroad corporation, organized and existing under the laws of another state, which owns and operates a railroad situated solely within the limits of that state, but which maintains its general offices in the state of California, at which all of its corporate business is transacted except the mere physical operation of the road itself, is "doing an intrastate business" in the state of California, within the meaning of the act of 1915 (Stats. 1915, c. 190), imposing an annual license tax upon corporations doing such business.

APPLICATION for a Writ of Mandate directed to the Secretary of State of the State of California.

The facts are stated in the opinion of the court.

C. O. Whittemore, for Petitioner.

U. S. Webb, Attorney-General, and Raymond Benjamin, Chief Deputy Attorney-General, for Respondent.

HENSHAW, J.—Petitioner, a railroad corporation, organized and existing under the laws of the state of Nevada, made tender to respondent, Secretary of State of the state of California, and offered for filing in the office of that official a certified copy of its articles of incorporation, and a certified copy of a resolution of its board of directors designating an agent for the state of California upon whom process issued out of

the courts of this state might be served, and with these papers tendered the fee of $75 as a prerequisite to such filing.  Respondent refused to accept and file the papers until, in addition, petitioner paid the license tax contemplated by the statute adopted in 1915.  (Stats. 1915, c. 190.)  Petitioner then sued for and obtained this alternative writ of mandate.

The facts are not in controversy.  The single question presented is the legal one, whether or not under those facts petitioner should be called upon to pay this additional license tax. The petitioner owns and operates a steam railroad which begins and ends entirely within the state of Nevada.  In the city of Los Angeles, state of California, it maintains the general offices of its company.  At these offices directors' meetings are held, the books, records, and accounts of the business of the corporation are kept, all of its general clerical work is performed, all vouchers and checks in payment of its bills, wages, and salaries are prepared and issued.  All moneys earned in the operation of its railroad are there received and deposited in the banks of Los Angeles, and all disbursements are made by checks and drafts issued from these general offices in that city.  In that city also is the purchasing department of the company, where its fuel oil and other supplies and material necessary for use in the operation of its railroad are purchased and transported from California into Nevada.  The conduct and policy of the road is controlled from these California offices, though the physical operation of the road itself is of necessity intrusted to superintendents and their subordinates located in the state of Nevada.

Section 1 of the act of 1915 above referred to requires a filing by this corporation with the Secretary of State of a copy of its articles of incorporation, and exacts a fee for this filing.  These were the papers and this the fee which petitioner tendered.  Section 3 of the same act further provides that no corporation, domestic or foreign, "shall do or attempt to do any intrastate business within this state . . . without a state license therefor."  Section 4 requires every corporation "now doing intrastate business within this state, or which shall hereafter engage in intrastate business in this state, to procure annually from the Secretary of State a license authorizing the transaction of such business in this state, and to pay therefor the license tax prescribed.herein."  This is the tax which petitioner has refused to pay, and this is the tax

without the payment of which the Secretary of State has refused to accept for filing the tendered papers.

The one legal question presented is whether under these admitted facts the corporation petitioner was "doing intrastate business" within the meaning of our statute. We are fully satisfied that it was. The facts here admitted differentiate this case entirely from cases like *General Conference of Free Baptists* v. *Berkey,* 156 Cal. 466, [105 Pac. 411], where a single act by a religious incorporation in selling its land was held to be the mere exercise of power and not the transaction of business as contemplated by our law; and *Caesar* v. *Capell,* 83 Fed. 403, where it was held that a foreign corporation which had not complied with the statutes of Tennessee by filing its charter could not successfully be charged with doing business in Tennessee in making a single loan of money to a citizen of that state. And equally do these facts differentiate this case from those like *Bertin & Lepori* v. *Mattison,* 69 Or. 470, [139 Pac. 330], where the mere taking of orders through a traveling salesman within the state, subject to the acceptance by the corporation at its home office, was held not to be the transaction of business within the meaning of the Oregon statute; and *Fuller* v. *Allen,* 46 Okl. 417, [148 Pac. 1008], where but a single act of business had been done and it was declared that the phrase "doing business" as employed in the statute contemplated the "doing a series of acts to secure a livelihood, profit, or pleasure"; and *Cockburn* v. *Kinsley,* 25 Colo. App. 89, [135 Pac. 1112], where a foreign corporation operated a mine in Mexico and borrowed money in Colorado to pay its landlord in Mexico, and all else that was done by the corporation in Colorado was the issuance of some stock to a nonresident and the causing to be printed by the treasurer of letter-heads designating the main office of the corporation at a place in the state. More nearly akin to the facts in the present case are the Illinois cases, *Bradbury* v. *Waukegan & Washington Min. & S. Co.,* 113 Ill. App. 600, and *Mandel* v. *Swan Land & Cattle Co.,* 154 Ill. 177, [45 Am. St. Rep. 124, 27 L. R. A. 313, 40 N. E. 462]. In the first of these cases the court seems to construe its statute touching "doing business" as meaning the doing directly of the primary business for which the corporation was organized. Thus, if it be a manufacturing corporation, the manufacturing must be done within the state; if a mining corporation, the mining must be done

within the state; if a railroad corporation, the railroad must be operated within the state, herein the court saying: "Opening an office in Waukegan and placing a safe and some office furniture therein for the convenience and use of the secretary and treasurer where he issued certificates of stock, kept the books, and the holdings of directors' meetings there, together with the other acts charged to have been done in Lake County, bear no resemblance to the powers and objects of this corporation, as set forth in the articles of incorporation. There is no pretense that the company owned any mining properties in this state, or that it was doing a mining or smelting business here. All of its mining properties were in the state of Washington and not in Illinois." Similar in effect, though involving the consideration of an entirely different question, is the other Illinois case, where it is declared that "the statute by the term 'doing business' has reference to the business for which the corporation was organized, and not to the form of its by-laws with reference to its relation to its own members, or by a resort to the courts of this state to recover a contract liability." In the case at bar the business transacted in this state was both continuous and vital to the well-being of the corporation. It could no more successfully operate its business without doing somewhere what it was doing in California than it could successfully operate its business without actually running its railroad. Much more closely in point are such familiar cases as *People* v. *Horn Silver Min. Co.*, 105 N. Y. 76, 77, [11 N. E. 155], *Baltic Min. Co.* v. *Massachusetts*, and the *S. S. White Dental Co.* v. *Massachusetts*, 231 U. S. 68, [58 L. Ed. 127, 34 Sup. Ct. Rep. 15], where are affirmed the decisions of the supreme court of Massachusetts in the same cases (*Baltic Min. Co.* v. *Commonwealth*, 207 Mass. 381, [93 N. E. 831]; *S. S. White Dental Mfg. Co.* v. *Commonwealth*, 212 Mass. 35, [Ann. Cas. 1913C, 805, 98 N. E. 1056]); while almost precisely in point are *Sleicher* v. *Pullman Co.*, 170 Fed. 365, where it is declared that a foreign railroad corporation which maintains offices in New York and there employs freight and passenger agents to solicit business, which also holds directors' meetings, disburses dividends and keeps an office for the transfer of its stock there, with an assistant secretary, is doing some substantial business in the state, though that particular railroad, the Chicago, Burlington & Quincy, had no trackage within the state of New York; and

*Stegall* v. *American Pigment & Chemical Co.*, 150 Mo. App. 251, [130 S. W. 144], where a foreign corporation owned a manufacturing plant in Illinois, but the directors' meetings were held in Missouri, the executive management was there conducted and its funds kept, and it was held that such corporation was doing business in Missouri.

It is manifest that the Secretary of State was justified in his refusal to accept the proffered papers without payment of the license tax, and the writ is therefore discharged.

Shaw, J., Lorigan, J., Sloss, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.