[Sac. No. 2831. In Bank.—February 9, 1920.]

PEOPLE OF THE STATE OF CALIFORNIA, Respondent, v. ALASKA PACIFIC STEAMSHIP COMPANY (a Corporation), Appellant.

[1] CORPORATIONS—DOING OF BUSINESS BY FOREIGN CORPORATION—DERIVATION OF POWER.—A corporation of another state derives its power to do business from its articles of incorporation and the laws of the state under which it was organized.

[2] ID.—COMPLIANCE OF FOREIGN CORPORATION WITH STATE LAWS—FRANCHISE NOT OBTAINED.—A foreign corporation by coming into

this state and filing its articles of incorporation herein and otherwise complying with the laws of this state regarding foreign corporations obtains no grant of power or franchise of any character from this state, since its powers are those only which it possesses by virtue of the laws of the state in which it was created.

[3] ID.—DOING BUSINESS BY FOREIGN CORPORATION — RIGHT OF COMITY.—A foreign corporation is permitted to do business and exercise its corporate franchises and powers in this state by comity only.

[4] ID.—LAWS OF STATE CONCERNING FOREIGN CORPORATIONS—SCOPE. The laws of this state relating to foreign corporations are purely negative and restrictive in character, and merely forbid the exercise in this state of a small part of the corporate power it already possesses, except on the specified conditions.

[5] TAXATION—RIGHT OF FOREIGN CORPORATION TO CARRY ON INTERSTATE BUSINESS.—The right of a foreign corporation after compliance with the laws of this state relating to foreign corporations to carry on interstate business and to acquire and convey the real property necessary therefor, and to maintain actions to protect its rights therein, is not subject to taxation by the state, notwithstanding all the instrumentalities by means of which it carries on interstate commerce and which have a local situs as property within the state may be taxed.

[6] ID.—FRANCHISE FOR OTHER THAN INTERSTATE COMMERCE BUSINESS —LIABILITY TO TAXATION.—The franchise of a foreign corporation to do business in this state, other than in carrying on interstate commerce, is not a property right and taxable until exercised in this state, and ceases to be property in this state when the exercise is discontinued.

[7] ID.—ACTION TO RECOVER TAXES—DISCONTINUANCE OF OTHER THAN INTERSTATE BUSINESS—NONESTOPPEL OF DEFENDANT.—In an action to recover taxes levied upon the franchise of a foreign corporation to do business in this state, the defendant is not estopped from showing that it had ceased to do any other than interstate business for two years, by reason of its report made in the previous year, as required by the Tax Act, nor by its payment, under protest, of the tax levied for the year on the same franchise, nor by its failure and refusal to make the report in the year in question, and consequent arbitrary assessment made on the claimed franchise.

APPEAL from a judgment of the Superior Court of Sacramento County.   Peter J. Shields, Judge.   Reversed.

The facts are stated in the opinion of the court.

McCutchen, Olney & Willard and McCutchen, Willard, Mannon & Greene for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

SHAW, J.—The defendant appeals from a judgment in favor of the plaintiff in an action to recover the sum of $675 levied by the state as taxes for the year 1912 upon a franchise which the state claims the defendant held and enjoyed during that year, described in the complaint as the right to do business as a corporation in the state of California.

The tax was levied in pursuance of the provision of the constitution that "all franchises, other than those expressly provided for in this section, shall be assessed at their actual cash value, in the manner to be provided by law, and shall be taxed at the rate of one per centum each year" (art. XIII, sec. 14, subd. d), and of The Tax Act of 1911 enacted in furtherance thereof. (Stats. 1911, p. 530.) The Tax Act provides that the franchises to be taxed under the constitution shall include "the actual exercise of the right to do business as a corporation in this state when such right is exercised by a corporation incorporated under the laws of any other state or country." (Sec. 5.)

The defendant claims that it did not have, or exercise within this state, any taxable franchise to do business as a corporation within this state during the year 1912, and that in consequence of this fact the tax so levied is invalid. The soundness of this claim is the only point to be determined in the case.

The defendant is a corporation organized and existing under and by virtue of the laws of the state of Maine. In the year 1906, in compliance with section 408 of the Civil Code, it filed with the Secretary of State its articles of incorporation and designated a person residing within the state as the person upon whom process against it could be served, as provided in section 405. The said act of 1911 authorized the state board of equalization to determine the value of the franchises held by any person or corporation taxable under the constitution, and to levy a tax thereon at the rate fixed, and further, that the record of the assessment showing unpaid taxes against any person or corporation assessed by the

state board "is *prima facie* evidence of the assessment upon the property and franchises, the delinquency, the amount of the taxes, penalties, and costs due and unpaid to the state, and that the company, person, or association is indebted to the people of the state of California in the amount of taxes and penalties therein appearing unpaid, and that all the forms of law in relation to the assessment and levy of such taxes have been complied with." (Sec. 24.)

Upon the trial the state introduced in evidence the record of the assessment referred to in said section for the year 1912, showing the assessment of the taxes for which recovery was asked in the complaint. As a defense the defendant offered to prove that when it filed its articles of incorporation and designated its agent in 1906 it began the operation of steamships running between San Francisco and ports in Oregon and Washington, constituting interstate commerce, and also running between San Francisco and Los Angeles in California; that in December, 1910, it entirely abandoned the operation of the line from San Francisco to Los Angeles, and that thereafter and ever since it has done no business in this state, except in connection with and as a part of the operation of steamships running between San Francisco and ports in the states of Washington and Oregon and engaged exclusively in interstate commerce. Upon objection on behalf of the plaintiff, the court below excluded the evidence of these facts. If the facts were material to the case, the evidence should have been admitted. As there is no dispute concerning the facts, we may consider the case on the assumption that they exist as shown by the evidence offered.

The claim of the plaintiff is that by filing its articles of incorporation with the Secretary of State and designating its resident agent upon whom process against it may be served, as required by the Civil Code, the defendant acquired from the state a franchise to do business as a corporation within the state; that it thereafter at all times continued to hold and possess such franchise, whether it exercised the same or not, and that such franchise is taxable property within the meaning of the constitutional provision aforesaid.

That such a franchise, if it existed in this state, would be taxable as property therein is not disputed. The claim of the defendant is that the right to do interstate business, so far as it is exercised in this state, is not taxable for state purposes; that such taxation would be a burden upon inter-

state commerce and is not allowed by the United States constitution and laws; that with respect to the right to carry on other business permitted by its corporate charter, the defendant does not possess any franchise which can be considered as property existing within this state, except while it carries on some business here in the exercise of such corporate powers, and that inasmuch as the defendant ceased to do any other than interstate business in 1910, and has not since engaged in any other business, it did not, in 1912, possess any corporate franchise in this state, except its nontaxable franchise to carry on interstate commerce business.

[1] A corporation of another state derives its power to do business from its articles of incorporation and the laws of the state under which it was organized. [2] By coming into this state and filing its articles of incorporation here and otherwise complying with our laws regarding foreign corporations it obtains no grant of power or franchise of any character from this state. Its powers are those only which it possesses by virtue of the laws of the state in which it was created. [3] It is permitted to do business and exercise its corporate franchises and powers in this state by comity only. (*American etc. Co.* v. *Superior Court,* 153 Cal. 536, [126 Am. St. Rep. 125, 17 L. R. A. (N. S.) 1117, 96 Pac. 15]; *Mulford Co.* v. *Curry,* 163 Cal. 285, [125 Pac. 236]; 19 Cyc. 1222.) [4] The laws of this state relating to foreign corporations are purely negative and restrictive in character. They impose a penalty upon the corporation which does not file its articles and designate its agent as required by the code, and merely provide that unless they do so, they shall not maintain any suit or action in any court of this state or acquire or convey the legal title to any real property within this state. The state does not thereby grant to the foreign corporation any power to do business as a corporation within this state. It merely forbids the exercise in this state of a small part of the corporate power it already possesses, except on the specified conditions.

The defendant, when it came into this state for the purpose of doing an interstate and intrastate business as a common carrier of freight and passengers, was required by our laws to file its articles and designate its resident agent in order to enable it to maintain actions for the protection and enforcement of its rights and acquire and convey real prop-

erty necessary for the business.   [5]   Its right to carry on
the interstate business and to acquire and convey the real
property necessary therefor and maintain actions to protect
its rights therein is not subject to taxes by the state.   "No
state has the right to lay a tax on interstate commerce in
any form, whether by way of tax laid on the transporta-
tion of the subjects of that commerce, or on the receipts
derived from that transportation, or on the occupation or
business of carrying it on, and the reason is that such taxa-
tion is a burden on that commerce, and amounts to a regula-
tion of it, which belongs solely to Congress." (*Leloup* v.
*Port of Mobile,* 127 U. S. 648, [32 L. Ed. 311, 8 Sup. Ct.
Rep. 1383, see, also, Rose's U. S. Notes].)   The tangible
property situated in this state possessed by an interstate com-
merce company, its incorporeal hereditaments in the nature
of local franchises or rights in real property or to the use
thereof,—in short, all the instrumentalities by means of
which it carries on interstate commerce and which have a
local situs as property within the state,—may be taxed, but
the right to carry on the interstate commerce business is not
taxable. (*Adams Express Co.* v. *Ohio,* 166 U. S. 218, [41
L. Ed. 965, 17 Sup. Ct. Rep. 604] ; *Gloucester Ferry Co.* v.
*Pennsylvania,* 114 U. S. 203, [29 L. Ed. 158, 5 Sup. Ct. Rep.
826] ; *Philadelphia etc. Co.* v. *Pennsylvania,* 122 U. S. 326,
[30 L. Ed. 1200, 7 Sup. Ct. Rep. 1118] ; *Galveston etc. Co.*
v. *Texas,* 210 U. S. 217, [52 L. Ed. 1031, 28 Sup. Ct. Rep.
638] ; *Wells Fargo Co* v. *Nevada,* 248 U. S. 167, [63 L. Ed.
190, 39 Sup. Ct. Rep. 62, see, also, Rose's U. S. Notes].)   It
follows from this principle that the tax cannot be upheld as
a tax upon the franchise of the defendant exercised in this
state for doing the interstate commerce business which it has
carried on.   It can be upheld only upon the theory that the
defendant possesses some other franchise having a situs in
this state.   The franchise to do business as a corporation was
possessed by the defendant before its advent into this state.
Such franchise is personal property and its situs is ordi-
narily the place of residence of the corporation; that is, its
home office.   But as its power to do business may be exer-
cised elsewhere, it follows that when so exercised the fran-
chise extends beyond the state from which it was obtained
and acquires a substantial existence wherever it is so exer-
cised.   [6]   Consequently, the only franchise of the defend-

ant which can be characterized as property within this state is the franchise which it exercises within the state. And such franchise can remain as property within the state only so long as it is exercised therein. The only powers which it exercised within this state during the year 1912, for which this tax was levied, were those exercised exclusively in carrying on interstate commerce. This was a franchise not taxable by the state. Its potential right to exercise other powers did not become a property right here until it was exercised and ceased to be property here when the exercise was discontinued. Consequently it did not exist in this state in the year 1912.

A pertinent illustration of this principle is found in the cases relating to section 19, article XI, of the constitution, as it existed prior to 1911, providing that in any city where no public works were owned or controlled by the municipality for supplying water or light to the inhabitants, any individual, or any domestic corporation duly authorized to do so, should have the right to use the public streets for laying pipes and conduits with which to carry on such public service. This is a general grant of the franchise to lay such pipes in the streets to every person or authorized corporation, but until it is exercised it is not property of any person or corporation. In *Bank of California* v. *San Francisco*, 142 Cal. 287, [100 Am. St. Rep. 130, 64 L. R. A. 918, 75 Pac. 837], it was said of these grants that while these rights were of the character of a franchise, "they have value only so far as the exercise thereof contributes to the value of the capital stock of the corporation," and that if the value of the franchises were limited to the cost of obtaining them, they "would be valueless and unassessable, for everybody possesses such rights under the terms of our constitution. It is the exercise of the right that gives the value that our laws require to be taxed." Upon a similar question in *Stockton etc. Co.* v. *San Joaquin County*, 148 Cal. 318, [7 Ann. Cas. 511, 5 L. R. A. (N. S.) 174, 83 Pac. 56], the court said: "While the right is accorded by the constitution to the plaintiff in common with all kindred corporations and with individuals to use the streets of a city for the purpose of furnishing illuminants to it and its inhabitants, it cannot be said that any one individual or corporation possesses this right merely by virtue of the constitutional pro-

vision.  The constitution extends a potential right to those
enumerated in its provisions to avail themselves of the bene-
fit of the franchise.  But this general extension of the privi-
lege does not invest individuals or corporations with the
franchise in the streets of any particular city.  It is only
acquired when the constitutional grant is actually accepted;
when the pipes and conduits for gas or the electric poles are
laid in or erected on the streets of the city.  It is then
owned by any individual or corporation doing so, as an ac-
cepted franchise under the general constitutional grant,
exercised in the particular city where these appliances are
laid or erected, . . . but they do not acquire it until they
have accepted it by proceeding to its actual exercise.''  In
*Western Union Tel. Co.* v. *Hopkins,* 160 Cal. 111, [116 Pac.
560], speaking of the general grant to telegraph companies
to construct lines of telegraph upon any public road in the
state, the court said that it was a franchise ''which, like the
grant made by section 19 of article XI of the constitution
regarding the use of streets for water or gas-pipes, would
vest only when actually accepted by the exercise of the right
granted and would be assessable only in the place where
such exercise is had.''  The theory that the potential unex-
ercised right of a foreign corporation to do business in this
state, which exists by comity only, constitutes taxable prop-
erty within this state would lead to results ridiculous and
absurd.  Every corporation of any foreign state or country
is privileged to enter this state and do business therein.
While it is doing such business, it is exercising corporate
powers within this state, and the privilege of doing so be-
comes valuable, but before it exercises that power or when
it ceases to do so, it is no longer possessed in this state of
anything of value.  If the rule were as claimed by plaintiff,
every corporation which has ever filed articles and desig-
nated a resident agent for the purpose of doing business
within this state would be immediately taxable for a fran-
chise even if it never entered this state or transacted any
business therein.  No one could reasonably contend for a
doctrine so extreme, yet if the rule claimed by the state is
correct, this would be the inevitable result.  To refer again
to the case of the use of streets for laying of water-mains,
the grant extends to every person and to every domestic cor-
poration empowered by its articles to do business of that

kind. If the mere right to use the street, without actually using it, constituted taxable property, it would follow that every person in the state would be subject to taxation for the possession of the right to lay mains in the streets of every city in the state for the purpose, of supplying water or light to its inhabitants. There is no substantial distinction between that case and the present case. The defendant corporation, for the purpose of carrying on its interstate business, was required to file its articles and designate its resident agent, if it desired to avoid the penalty or to maintain an action, or to acquire or convey property. It obtained from the state of its creation the power to do other kinds of business also. The case is in all respects the same as if the defendant had never at any time engaged in any other business than that of interstate commerce. The fact that prior to 1912 it did do intrastate business and was taxable for the exercise of that power as a franchise enjoyed by it during that period, does not authorize the conclusion that it is taxable for that franchise during succeeding years, when it does not exercise the same, nor that it would be more liable because of the previous exercise than it would have been had it never exercised the same.

Our conclusion is that the potential right which the defendant had during the year 1912 to carry on intrastate commerce in this state, but which it did not exercise, was not taxable property within this state, and that the court below erred in excluding the evidence to show that it did not exercise such right during the year 1912, for which the tax in question was levied.

[7] We cannot agree with the contention of the plaintiff that the defendant is estopped to show the facts concerning its possession of the franchise by reason of its report made in the year 1911, as required by the said Tax Act, nor by its payment, under protest, of the tax levied for the year 1911 on the same franchise, nor by its failure and refusal to make the report in the year 1912 and the consequent arbitrary assessment made on the claimed franchise by the state board of equalization and which is the subject of this suit. No element of estoppel appears to us to arise from these facts. In fact, the protest accompanying the payment of taxes in 1911 gave to the state officers the information that the defendant claimed that it was engaged only in interstate

commerce and that its franchise to do business was not taxable.

The judgment is reversed.

Lennon, J., Wilbur, J., Angellotti, C. J., and Lawlor, J., concurred.

Mr. Justice Olney, being disqualified, did not participate.

Rehearing denied.

All the Justices concurred, except Olney, J., who did not participate.