[L. A. No. 14286. In Bank.—March 26, 1935.]

UNION OIL ASSOCIATES (a Corporation), Respondent, v. CHARLES G. JOHNSON, State Treasurer, Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Appellant.

Andrews & Andrews, Paul M. Gregg and L. W. Andrews for Respondent.

Hahn & Hahn, A. Hale Dinsmoor, Theodore L. Breslauer, Claude I. Parker, Ralph W. Smith and Pillsbury, Madison & Sutro, as *Amici Curiae* on Behalf of Respondent.

SEAWELL, J.—The plaintiff, Union Oil Associates, a California corporation, brought this action in the Superior Court of Los Angeles County to recover from Charles G. Johnson, State Treasurer, $49,099.72, which sum represents the amount of taxes, plus interest, levied against plaintiff for the year 1931 under the Bank and Corporation Franchise Tax Act, and paid by it under protest. The defendant State Treasurer demurred to the complaint on the ground that it did not state a cause of action. The court below overruled the demurrer, and upon defendant's failure to answer entered judgment for plaintiff.

Section 16, article XIII, state Constitution, as it read at the time of levy and payment of the tax herein, provided that "all financial, mercantile, manufacturing and business corporations doing business within the limits of this state, subject to be taxed pursuant to subdivision (d) of section 14 of this article (Article XIII), in lieu of the tax thereby provided for, shall annually pay to the state for the privilege of exercising their corporate franchises within this state a tax according to or measured by their net income. . . . " Plaintiff is a holding company organized under the laws of this state to own and hold stock of the Union Oil Company of California and distribute dividends paid thereon to its own stockholders. It is conceded that plaintiff is neither a financial, mercantile, nor manufacturing corporation. It contends that it is not a "business corporation" or "doing business" within the meaning of section 16, article XIII, and the Bank and Corporation Franchise Tax Act enacted pursuant thereto. It is plaintiff's contention, sustained by the court below, that the phrases "doing business" and "business corporation", as used in federal excise tax acts, have acquired a well-defined meaning through judicial interpretation, which precludes their application to a holding company such as plaintiff; and that in view of the history of the constitutional amendment (section 16, article XIII), and the Bank and Corporation Franchise Tax Act, enacted pursuant thereto, said phrases must be given the same interpretation when used therein as in the federal statutes. Defendant State Treasurer contends that it was not the intention of the people or the legislature to adopt the federal construction; that when a corporation is doing the very

things it was organized to do, and it is not a charitable, benevolent, or social corporation, it is a "business corporation" and subject to pay the tax according to or measured by net income.

We have quoted above the provision of subdivision 2(a), section 16, article XIII, Constitution, providing for a tax to be paid by financial, mercantile, manufacturing and business corporations. Subdivision 5 of said section provides as follows: "The legislature shall define 'corporations' and 'doing business' . . . "

The Bank and Corporation Franchise Tax Act, enacted in 1929 to carry the constitutional provision into effect, provided that every corporation "of the classes referred to in subdivision 2(a) of section 16 of article thirteen of the constitution of this state", should pay annually to the state for the privilege of exercising its corporate franchises within this state a tax at the rate of four per centum upon the basis of its net income for the next preceding fiscal or calendar year. (Stats. 1929, p. 19, sec. 4.) In section 5 of the act the legislature defined the term "corporation" as follows: "The term 'corporation', as herein used, shall include every financial corporation, other than a bank or banking association, and every mercantile, manufacturing and *business* corporation of the classes referred to in subdivision one (c) of section 5219 of the Revised Statutes of the United States." "Doing business" is defined in said section 5 as follows: "The term *'doing business'*, as herein used, means any transaction or transactions in the course of its *business* by a corporation created under the laws of this state, or by a foreign corporation qualified to do or doing intrastate business in this state." (Italics supplied.)

In 1933 the act was amended by addition of the following provision in section 4: "Any corporation organized to hold the stock or bonds of any other corporation or corporations, and not trading in such stock or bonds or other securities held, and engaging in no other activities than the receipt and disbursement of dividends from such stock or interest from such bonds, shall not be considered a financial, mercantile, manufacturing or business corporation or a corporation doing business in this State for the purposes of this act." (Stats. 1933, p. 693.) Plaintiff corporation, upon the basis of the allegations contained in its complaint, brings itself

within this proviso. However, the taxes which it seeks to recover were for the year 1931, prior to the amendment. Although exempted from payment of the tax according to or measured by net income, such companies as plaintiff, in 1933, after change in the constitutional provisions of section 16, article XIII, were made subject to an annual tax of $25 by the amendatory provisions of the act. The definition of the term "doing business" was changed in 1933 to read as follows: "The term 'doing business', as herein used, means actively engaging in any transaction for the purpose of financial or pecuniary gain or profit." (Stats. 1933, p. 694.)

Section 16, article XIII, state Constitution, and the Bank and Corporation Franchise Tax Act also provide for "a tax according to or measured by their net income to be paid by banks and banking associations, both state and national." (Subd. 1 [a], sec. 16, art. XIII.) In 1928, the tax commission appointed by the Governor pursuant to an act of the 1927 legislature reported that the existing share-tax method (subd. c, sec. 14, art. XIII, state Const.) as applied in this state to shares of stock in national banks was "probably invalid" as a result of several recent decisions of the Supreme Court of the United States, commencing with *Merchants National Bank of Richmond, Virginia,* v. *City of Richmond,* 256 U. S. 635 [41 Sup. Ct. 619, 65 L. Ed. 1135], and including *First National Bank of Hartford, Wisconsin,* v. *City of Hartford,* 273 U. S. 548 [47 Sup. Ct. 462, 71 L. Ed. 767, 59 A. L. R. 1], and *State of Minnesota* v. *First National Bank of St. Paul,* 273 U. S. 561 [47 Sup. Ct. 468, 71 L. Ed. 774]. The commission found that unless an amendment to the state Constitution should be passed in the fall of 1928 to lay the foundation for a valid system of bank taxation, revenues paid to the state by the banks under protest in 1926 and 1927, and revenues which would become due from them for 1928, 1929 and 1930, to the extent of $22,-050,000, would be jeopardized. (Special Report of the California Tax Commission, appearing in Final Report of the California Tax Commission, March 5, 1929, p. 243, particularly at pp. 247 and 250–264.) Before submission of the commission's report in August, 1928, the banks generally had brought suit to recover taxes paid under protest in 1926 and 1927. Acting upon the plea of the commission that

a grave fiscal emergency existed which demanded immediate corrective action, the Governor called a special session of the legislature which met on September 4 and 5, 1928, and voted to submit to the people the constitutional amendment recommended by the commission. (Report Tax Commission, p. 2.) The amendment was approved at the election of November 6, 1928, and in 1929 the legislature enacted the Bank and Corporation Franchise Tax Act to carry into effect the provisions thereof.

The state's power to tax national banks depends entirely upon section 5219 of the United States Revised Statutes, in which the various methods for the state taxation of national banks consented to by Congress, and the prescribed conditions to which each is subject, are set forth. (*People* v. *Weaver*, 100 U. S. 539 [25 L. Ed. 705]; *First National Bank* v. *Anderson*, 269 U. S. 341, 347 [46 Sup. Ct. 135, 70 L. Ed. 295]; *Bank of California* v. *Richardson*, 248 U. S. 476, 483 [39 Sup. Ct. 165, 63 L. Ed. 372].) In 1926 said section was amended to authorize the states to tax national banking associations "according to or measured by their net income", provided "the rate shall not be higher than the rate assessed upon other financial corporations, nor higher than the highest of the rates assessed by the. taxing state upon mercantile, manufacturing, and business corporations doing business within its limits". (Subd. 1 [c], sec. 5219, Revised Statutes of the United States.) The tax commission was of the view that of the methods of taxing national banks permitted by section 5219, this new fourth method offered the only practical legal solution which could be adjusted to other features of our tax system. (Final Report, California Tax Commission, March 5, 1929, p. 263.) It appears from the report of the tax commission that the banks had indicated that they would withdraw suits instituted by them to recover taxes paid under protest if provision were made for a satisfactory tax according to or measured by net income. This solution, however, required a recasting of the existing corporation taxes to comply with the requirement as to national bank taxation according to or measured by net income that the rate upon banks "not be higher than the rate assessed upon other financial corporations nor higher than the highest of the rates assessed by the taxing state upon mercantile, manufacturing, and business corporations doing

business within its limits''. The commission was further of the view that aside from using a corporate income tax to validate a tax on banks ''according to or measured by their net income'', such a tax would be more equitable as a business tax than the existing corporate excess method of taxing such corporations. (Report Tax Commission, March 5, 1929, p. 268; for discussion of corporate excess method of taxation, see *Miller & · Lux* v. *Richardson,* 182· Cal. 115 [187 Pac. 411].) Accordingly, the constitutional amendment approved by the people on November 6, 1928, provided for a tax according to or measured by net income to be paid by banks and by certain corporations doing business within this state.

Both the constitutional provision and the Bank and Corporation Franchise Tax Act provide that ''financial, mercantile, manufacturing and *business''* corporations *''doing business* within the limits of this state'' shall pay the tax. (Italics supplied.) Thus our state constitutional provision and legislation adopt the language of that portion of section 5219, Revised Statutes, by which the validity of a tax upon national banking associations according to or measured by net income is made to depend upon the rate being not ''higher than the rate assessed on other financial corporations, nor higher than the highest of the rates assessed by the taxing state upon mercantile, manufacturing, and *business* corporations *doing business* within its limits. . . . ''
Not only in enumerating the classes of corporations subject to the tax did the legislature adopt the language of section 5219, but in defining the term ''corporation'' it expressly refers to said section 5219 in the following manner: ''Sec. 5. The term 'corporation', as herein used, shall include every financial corporation, other than a bank or banking association, and every mercantile, manufacturing and *business* corporation of the classes referred to in subdivision one (c) of section 5219 of the Revised Statutes of the United States.'' The ''classes referred to in subdivision one (c) of section 5219'', are ''financial corporations'' and ''mercantile, manufacturing and *business* corporations *doing business* within its [the state's] limits''. Hence, plaintiff argues, it was the intent of the people and the legislature that the interpretation placed upon the phrases ''business corporation'' and ''doing business'' by the federal courts should govern our state provisions, with the result that a holding

company is not a "business corporation". We are in accord with this contention.

The cases to which respondent has cited us to establish the federal definition of "business corporation" and "doing business" did not interpret those terms as used in subdivision 1 (c) of section 5219, adopted in 1926, but, rather, involved the federal excise tax acts of 1909 and of 1916 and subsequent years. The Corporation Tax Act of 1909 (36 U. S. Stats. at Large, chap. 6, pp. 112–117) provided for an excise tax to be paid by corporations "organized for profit" and "engaged in business in any state . . . with respect to the carrying on or doing business by such corporation . . . equivalent" to a stated percentage upon net income. The act of 1916 (39 Stats. at Large, chap. 463, p. 789) provided for a tax upon domestic corporations organized for profit "with respect to carrying on or doing business" at certain rates for a fair value of their capital stock, and exempted corporations "not engaged in business" during the preceding taxable year. Through decisions interpreting these excise tax acts it became settled that corporations which were mere holding companies were not subject to the tax. (*Flint* v. *Stone Tracy Co.*, 220 U. S. 107 [31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312]; *United States* v. *Emery, Bird, Thayer Realty Co.*, 237 U. S. 28 [35 Sup. Ct. 499, 59 L. Ed. 825]; *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187 [31 Sup. Ct. 361, 55 L. Ed. 428]; *McCoach* v. *Minehill & S. H. Ry. Co.*, 228 U. S. 295 [33 Sup. Ct. 419, 57 L. Ed. 842]; *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503 [37 Sup. Ct. 201, 61 L. Ed. 460]; *United States* v. *Hotchkiss Redwood Co.*, 25 Fed. (2d) 958; *Rose* v. *Nunnally Inv. Co.*, 22 Fed. (2d) 102; *Challam Lbr. Co.* v. *United States*, 34 Fed. (2d) 944; *Argonaut Consol. Min. Co.* v. *Anderson*, 42 Fed. (2d) 219.)

There can be little doubt that the Supreme Court of the United States in construing the meaning of the terms "doing business" and "business corporations" in subdivision 1 (c) of section 5219, Revised Statutes, which authorizes a state excise tax upon national banking associations, would follow the definition given by it to those terms as used in the Tax Acts of 1909, 1916 and subsequent years establishing federal excise taxes. ■ It is a cardinal principle of statutory construction that where legislation is framed in the

language of an earlier enactment on the same or an analogous subject, which has been judicially construed, there is a very strong presumption of intent to adopt the construction as well as the language of the prior enactment. (*In re Nowak*, 184 Cal. 701 [195 Pac. 402]; *Dalton* v. *Lelande*, 22 Cal. App. 481, 486 [135 Pac. 54]; 59 C. J. 1061; 23 Cal. Jur. 794; *Hecht* v. *Malley*, 265 U. S. 144 [44 Sup. Ct. 462, 68 L. Ed. 949]; *Latimer* v. *United States*, 223 U. S. 501 [32 Sup. Ct. 242, 56 L. Ed. 526].) A similar principle applies where a statute is patterned after legislation of another state, or of the federal government, or, indeed of a foreign country, which has been judicially construed in the jurisdiction of its enactment. (*Ocean Accident etc. Co.* v. *Industrial Acc. Com.*, 173 Cal. 313, 317 [159 Pac. 1041]; *Estate of Potter*, 188 Cal. 55, 68 [204 Pac. 826]; *Charles Nelson Co.* v. *Morton*, 106 Cal. App. 144 [288 Pac. 845]; *People* v. *Norcross*, 71 Cal. App. 2 [234 Pac. 438]; 23 Cal. Jur. 794; 59 C. J. 1065.)

In the instant case our constitutional amendment and legislation were enacted to establish a mode of taxation which would comply with the federal permissive statute. The presumption that the adoption of the words of the federal enactment evinces an intent to adopt the federal construction thereof is even stronger than in the ordinary case where legislation of one jurisdiction is merely modeled after that of another. It is true that subdivision 1 (c) of section 5219 is not a restriction upon the classes of corporations which the state may tax, and does not proscribe a tax upon holding companies measured by net income. It simply provides that if a tax according to or measured by net income is levied on banks, the rate must not be higher than the rate on other financial corporations, nor higher than the highest of the rates assessed on mercantile, manufacturing and business corporations. Consistently with this restriction the state might have provided that holding companies should be subject to the tax along with other corporations, but the constitutional and legislative provisions are not subject to such construction. The proposed constitutional amendment submitted to the legislature by the tax commission provided that "corporations doing business in this state, of the class covered by subdivision (d) of section 14", article XIII, should pay the tax, and omitted the modifying adjectives

"financial, mercantile, manufacturing and business".. The legislature rejected this inclusive language and instead appropriated the exact words of section 5219 before submission of the amendment to the people. (Report of the California Tax Commission, March 5, 1929, p. 290.) The legislature further evidenced the intent to adopt the federal construction by expressly defining "corporation" to include "every financial corporation, other than a bank or banking association, and every mercantile, manufacturing and business corporation *of the classes referred to in subdivision one (c) of section 5219 of the Revised Statutes of the United States*". (Italics supplied.)

In the light of this analysis the purpose of the legislature in adopting the 1933 amendment to sections 4 and 5 of the act, quoted earlier herein, and providing that such a holding company as plaintiff shall not be considered a "business corporation", was to clarify the legislative intent by expressly declaring the meaning of the words used in the act. (*Diethelm* v. *Rainey*, 1 Cal. (2d) 245 [33 Pac. (2d) 1026]; 59 C. J. 1097; 2 Sutherland, Statutory Construction, p. 777.) By the same amendment, holding companies, although not "business corporations", were made subject to an annual tax of $25. Section 16 of article XIII was also amended in that year, and the authorization therein for corporate taxation does not limit the corporations to be taxed thereunder to financial, mercantile, manufacturing and business corporations. In an "Analysis of the Bank and Corporation Franchise Tax Act" submitted to the California Tax Research Bureau in the office of the state board of equalization in January, 1933, the authors point out that to tax holding companies under the act according to net income would drive them out of the state. (Traynor and Keesling, Analysis of the Bank and Corporation Franchise Tax Act, p. 46; see, also, 21 Cal. Law Rev., p. 545.)

The federal courts have declared that it is impossible in the nature of the case to prescribe fixed rules which may be applied in all cases to determine whether a corporation is a mere passive holding company, or a business corporation, and that each case must be decided on its particular facts. The judgment for plaintiff in the case herein was entered upon defendant's demurrer to the complaint. By the allegations of said complaint plaintiff brings itself clearly within

the federal definition of a holding company. By the complaint it is made to appear that plaintiff was organized for the purpose of consolidating and maintaining in one holding or pool shares of the capital stock of the Union Oil Company of California. In return for shares of stock of the Union Oil Company it issued an equal or like number of its own shares. Its stockholders received all dividends paid on Union Oil Company shares minus such sums as were necessary to be deducted in order to pay the corporate expenses of plaintiff. Further, it is alleged that the only assets possessed by plaintiff, other than capital stock of the Union Oil Company, was its office furniture and equipment, and from time to time small amounts of cash for defraying current corporate expenses. Its only income is from shares of stock of the Union Oil Company, none of which stock, it is alleged, has ever been sold, mortgaged or hypothecated. The corporations expressly declared not to be ''business corporations'' in the amendment of 1933 to the Bank and Corporation Franchise Tax Act likewise would not be ''business corporations'' under the federal decisions, but holding companies. We have heretofore held that this state has adopted the federal definition, and that the amendment of 1933 is a clarification and legislative expression of the meaning of existing legislation. Plaintiff, upon the basis of the allegations of its complaint, is not a business corporation according to said amendment. It is organized to hold the stock of the Union Oil Company, and does not trade in such stock, and engages in no other activities than the receipt and disbursement of dividends.

The judgment is affirmed.

Curtis, J., Waste, C. J., and Langdon, J., concurred.

Preston, J., deeming himself disqualified, did not participate herein.

THOMPSON, J., Dissenting.—I cannot bring myself to concur in the prepared opinion.

This action was brought by the plaintiff to recover from the defendant the franchise tax paid by the plaintiff in the year 1931, based upon its income for the year 1930. The demurrer of the defendant being overruled, and he declin-

ing to answer, his default was entered and judgment followed. This appeal is from the judgment.

By the complaint it is made to appear that the respondent was organized for the purpose of consolidating and maintaining in one holding or pool shares of the capital stock of the Union Oil Company of California. In return for shares of stock of the Union Oil Company it issued an equal or like number of its own shares. Its stockholders received all of the dividends paid on Union Oil Company shares minus such sums as were necessary to deduct in order to pay the corporate expenses of the respondent. Further, it is alleged that the only assets possessed by respondent, other than capital stock of the Union Oil Company, was its office furniture and equipment and from time to time small amounts of cash for the defraying of current corporate expenses. Its only income is from shares of stock of the Union Oil Company, none of which stock, it is alleged, has ever been sold, mortgaged or hypothecated.

Further allegations disclose that by action of the franchise tax commissioner, approved by the state board of equalization, respondent was obliged to pay the sum of $44,552.63, plus interest in the sum of $4,522.09, the amount of which tax was arrived at by estimating that of the sum of $4,872,864 paid to the respondent as dividends by the Union Oil Company, 29.643976 per cent thereof arose out of and was paid from income earned by the Union Oil Company in business transactions outside the state of California.

In 1928, section 16 of article XIII was added to the state Constitution and in its material parts provides as follows:

"2. (a) All financial, mercantile, manufacturing and business corporations doing business within the limits of this state, subject to be taxed pursuant to subdivision (d) of section 14 of this article . . . shall annually pay to the state for the privilege of exercising their corporate franchise within this state a tax according to or measured by their net income.

"5. The legislature shall define 'corporations' and 'doing business'; shall define 'net income' and may define it to be the entire net income received from all sources. . . . "

In 1929 there was passed the "Bank and Corporation Franchise Tax Act" (Stats. 1929, p. 19), the pertinent provisions of which are as follows:

"Sec. 4. Every financial, mercantile, manufacturing and business corporation doing business within the limits of this state, of the classes referred to in subdivision 2 (a) of section 16 of article thirteen of the Constitution of this state, shall annually pay to the state *for the privilege of exercising its corporate franchises within this state,* a tax according to or measured by its net income, to be computed, in the manner hereinafter provided, at the rate of four per centum upon the basis of its net income for the next preceding fiscal or calendar year.

"Sec. 5. The term 'corporation', as herein used, shall include every financial corporation, other than a bank or banking association, and every mercantile, manufacturing and business corporation of the classes referred to in subdivision one (c) of section 5219 of the Revised Statutes of the United States.

"The term 'bank', as hereinafter used, shall include national banking associations.

"The term 'doing business', as herein used, means any transaction or transactions in the course of its business by a corporation created under the laws of this state, or by a foreign corporation qualified to do or doing intrastate business in this state.

"Sec. 6. The term 'gross income', as herein used, includes gains, profits and income derived from the business, of whatever kind and in whatever form paid; gains, profits or income from dealings in real or personal property; gains, profits or income received as compensation for services, as interest, rents, commissions, brokerage or other fees, or otherwise received in carrying on such business; all interest received from federal, state, municipal or other bonds, and, except as hereinafter otherwise provided, *all dividends received on stocks.*

"Sec. 7. The term 'net income', as herein used, means the gross income less the deductions allowed."

In providing what deductions from the gross income shall be permissible, section 8 (h) reads:

"Dividends received during the taxable year from income arising out of business done in this state; but if the income out of which the dividends are declared is derived from business done within and without this state, then so much of the dividends shall be allowed as a deduction as the amount

of the income from business done within this state bears to the total business done.

"The burden shall be on the taxpayer to show that the amount of dividends claimed as a deduction has been received from income arising out of business done in this state."

That portion of section 5219 of the Revised Statutes of the United States, referred to in section 5 of the Bank and Corporation Franchise Act which is material to the present case, permits the states to tax national banking associations "according to or measured by their net income", provided the following conditions are complied with: " . . . (c) In case of a tax on or measured by the net income of an association, the taxing state may, except in case of a tax on net income, include the entire net income received from all sources, but the rate shall not be higher than the rate assessed upon other financial corporations nor higher than the highest of the rates assessed by the taxing state upon mercantile, manufacturing, and business corporations doing business within its limits: Provided, however, that a state which imposes a tax on or according to or measured by the net income of, or a franchise or excise tax on, financial, mercantile, manufacturing, and business corporations organized under its own laws or laws of other states and also imposes a tax upon the income of individuals, may include in such individual income dividends from national banking associations located within the state on condition that it also includes dividends from domestic corporations, and may likewise include dividends from national banking associations located without the state on condition that it also includes dividends from foreign corporations, but at no higher rate than is imposed on dividends from such other corporations."

It is respondent's first contention that it is not doing business in this state within the meaning of the constitutional section; that the legislature has not the right to create a liability by defining the words "doing business" and that by the adoption of the section of the Constitution we have adopted the construction placed upon the phrase "engaged in business" used in the federal acts referred to later in this opinion.

However, the mere recital of the constitutional provision, the sections of the legislative act and the material provisions of the federal act provokes two preliminary observations. First, it is to be noted that the tax here in question is one upon the franchise of domestic corporations and foreign corporations ''doing business'' in this state and not one upon the income of such corporations. Second, the enumeration of certain kinds of corprations in section 5219 of the Revised Statutes of the United States is in nowise restrictive of the corporate franchises which may be taxed by the state, but only that those enumerated must be taxed if a franchise tax measured by the net income is to be laid upon national banking associations. In other words, it was the congressional intention to prevent discrimination in favor of the designated corporations to the detriment of national banking associations. These observations suggest that the expression ''doing business'' was employed in the constitutional provision in order to include foreign corporations ''doing business'' of an intrastate character in the state. This thought is to a degree confirmed by decisions heretofore rendered to the effect that it is the exercise of the right by a foreign corporation to do intrastate business in the state which was the property to be taxed under article XIII, section 14, subdivision (d), of the Constitution providing that the franchises of all corporations except those otherwise mentioned in the section should be taxed at their actual cash value. (See *People* v. *Alaska S. S. Co.*, 182 Cal. 202 [187 Pac. 742] ; *People* v. *Ford Motor Co.*, 188 Cal. 8 [204 Pac. 217].) In the first cited case this court said: ''The theory that the potential unexercised right of a foreign corporation to do business in this state, which exists by comity only, constitutes taxable property within this state would lead to results ridiculous and absurd. Every corporation of any foreign state or country is privileged to enter this state and do business therein (herein). While it is doing such business, it is exercising corporate powers within this state, and the privilege of doing so becomes valuable, but before it exercises that power or when it ceases to do so, it is no longer possessed in this state of anything of value.'' And in the second case cited we find the following persuasive language: ''The right to be a corporation, or to do business as a corporation, is a franchise which ordi-

narily has its situs at the place where the home office of the corporation is situated but, when a corporation engages in business in a state other than the state wherein it was chartered, the actual exercise of the power to engage in business creates valuable intangible property in the foreign state where the business is transacted. In other words, the actual exercise of the power to do business is also a franchise and such a franchise has a substantial existence in every state where the business is transacted.''

The respondent places great weight for its contention that the words ''doing business'' must be held to mean ''the aggressive pursuit of gain'' and not merely the receipt of the ordinary fruits incident to the ownership of property, upon decisions of the federal courts construing and applying the Corporation Tax Law (Act of August 5, 1909, U. S. Stats. at Large, vol. 36, chap. 6, pp. 11, 112–117) and the Capital Stock Tax Law of 1918 (40 Stats. at Large, p. 1126, sec. 1000) and 1921 (42 Stats. at Large, p. 294, sec. 1000), which levied a tax upon corporations ''engaged in business'' but excluded those not so engaged. Having before it the contention that the tax imposed by the act of 1909 was a direct tax upon property, the United States Supreme Court, in the case of *Flint* v. *Stone-Tracy Co., etc.,* 220 U. S. 107 [31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312], at page 145, says: ''While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act, nevertheless the declaration of the law-making power is entitled to much weight, and in this statute the intention is expressly declared to impose a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, or insurance company. It is therefore apparent, giving all of the words of the statute effect, that the tax *is imposed not upon the franchises of the corporation* irrespective of their use in business, nor upon the property of the corporation, but upon *the doing of corporate or insurance business* and with respect to the carrying on thereof, in a sum equivalent to one per centum upon the entire net income over and above $5,000 received from all sources during the year; that is, when imposed in this manner it is a tax upon the doing of

business with the advantages which inhere in the peculiarities of corporate or joint-stock organizations of the character described. As the latter organizations share many benefits of corporate organization it may be described generally as a tax upon the doing of business in a corporate capacity. In the case of the insurance companies the tax is imposed upon the transaction of such business by companies organized under the laws of the United States or any State or Territory, as heretofore stated.'' And in *Rose* v. *Nunnally Inv. Co.*, 22 Fed. (2d) 102, in applying the Capital Stock Tax Law the court uses similar language as follows: ''Upon the authority of these cases it may safely be stated that the tax is based, not upon the charter powers of the corporation, but upon its activities, and that a corporation which merely receives the income earned by assets which it owns, and distributes that income among stockholders, is not engaged in business.'' Bearing in mind the restriction against the levy of direct taxes by the federal government except when apportioned according to population (for thorough discussion of the subject of direct taxes see *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429 [15 Sup. Ct. 673, 39 L. Ed. 759]), the consequent necessity of levying an excise tax upon the doing of business under a corporate form, if the corporation is to be taxed, and the difference between a tax so levied and that laid upon the franchises of domestic corporations and foreign corporations ''doing business'' in this state, it becomes apparent that the federal cases construing the statutes already mentioned cannot be considered as controlling. This conclusion disposes of the contention that we have adopted the construction of the words ''engaged in business'' placed thereupon by the federal courts, and also demonstrates that the legislature did not transcend its power of definition when it placed a construction upon the words ''doing business'' which they would have borne even without legislative expression.

As we have already indicated, the intention sought to be expressed in the constitutional provision, followed by the legislative enactment by the use of the words ''doing business'', was to subject those corporations to a tax which are doing some substantial part of their ordinary business, or exercising some of the functions for which they were created (*Estate of Wellings*, 192 Cal. 506 [221 Pac. 628), because

they are then doing business within the state. (See *Estate of Wellings, supra; Bullfrog Goldfield R. R. Co.* v. *Jordan*, 174 Cal. 342 [163 Pac. 40] ; 7 Cal. Jur., p. 222, secs. 704–706.)

We have already observed that the expression "doing business" as construed by the federal courts is not in point because the tax there imposed was not upon the franchises of the corporations but upon the doing of corporate business. The constitutional amendment expressly declares against the adoption of the interpretation put upon the phrase by the federal courts when it says in subdivision 5 of section 16 of article XIII ' " . . . the legislature shall define . . . 'doing business'." Following this declaration by the people that the legislature was to determine the meaning of the phrase "doing business", the legislature, in section 5 of the Bank and Corporation Franchise Tax Act, already quoted, said: "The term 'doing business', as herein used, means any transaction or transactions in the course of its business by a corporation created under the laws of this state or by a foreign corporation qualified to do or doing intrastate business in this state." How can it be said, when the people have directed the legislature to define the phrase and the legislature has defined it, that the interpretation put upon the phrase by the federal courts when considering a different kind of tax was intended to be carried over into our act?

There is another reason why it seems to me impossible to escape the conclusion that the respondent fell within the provisions of the act and was taxable thereunder. In 1933, pursuant to the "Analysis of the Bank and Corporation Franchise Tax Act" submitted by Roger J. Traynor and Frank M. Keesling, and mentioned in the opinion prepared by Mr. Justice Seawell, the legislature adopted an amendment to the Bank and Corporation Franchise Tax Act (see Stats. 1933, p. 692) in which, among other things, it is provided as follows:

"Any corporation organized to hold the stock or bonds of any other corporation or corporations, and not trading in such stock or bonds or other securities held, and engaging in no other activities than the receipt and disbursement of dividends from such stock or interest from such bonds, shall not be considered a financial, mercantile, manufacturing or

business corporation or a corporation doing business in this State for the purposes of this act.''

It was also provided that every corporation subject to be taxed pursuant to subdivision (d) of section 14 of article XIII of the Constitution and not otherwise taxed should pay annually to the state a tax of $25 in lieu of the tax on its general corporate franchise. In other words, the legislature, recognizing that by the terms of the Bank and Corporation Franchise Tax Act holding companies were taxed, by the amendment relieved them of such taxes and imposed an annual tax of $25. The amendment constitutes a legislative construction of the previous act and is entitled to weight in our determination of whether the respondent is subject to the tax.

Respondent also contends that it is not within the act because it is neither a financial, a mercantile, a manufacturing nor a business corporation. We may assent to the proposition that it is neither mercantile nor manufacturing in character. But we cannot agree that it is neither a business nor a financial organization. The expression ''business corporation'' signifies a corporation the purpose of which is that of personal material gain to its members. (National Bank Taxation in California, 17 Cal. Law Review, 456, at 493, and cases cited.) The respondent's articles of incorporation, by reference made a part of its complaint, disclose that it was formed for the purpose of buying or otherwise acquiring shares of stock of the Union Oil Company and of exercising all of the rights, powers and privileges of the ownership of such shares and to avail itself ''of all benefits at any time offered to or conferred upon, or made available to, stockholders of said Union Oil Company of California'', and to vote the stock at meetings of the stockholders of the Union Oil Company. We cannot say to what degree the respondent controls the management of the Union Oil Company through its stockholders, but it is apparent that its purpose is the mutual protection and material, pecuniary gain of its members.

Respondent asserts that the act is unconstitutional because article XIII, section 16—2 (a), already quoted, provides that corporations ''shall annually pay . . . a tax according to or measured by their net income'' wherever the act says that the tax shall be ''upon the basis of its net income for the

next preceding year''. It is claimed that the act is at variance with the Constitution. We need spend but little time on this statement. The tax is measured by the nearest ascertained income and we know of no more logical or reasonable way of carrying out the intention of the people. Instead of being at variance the two provisions are in complete harmony.

It is also claimed that the tax exacted from respondent constitutes a burden upon interstate business. The only argument advanced in support of this statement is that the tax ''is based entirely upon income derived from the interstate business of the Union Oil Company—a tax with relation to interstate commerce alone''. A complete answer to this suggestion is found in *Pacific Co., Ltd.,* v. *Johnson,* 212 Cal. 148 [298 Pac. 489], wherein it was held that the tax being upon the franchise of the corporation without reference to the character of the property in which its funds are invested, income from nontaxable securities might be used for the purpose of measuring the tax.

Finally it is said that the act is discriminatory in that personal corporate stockholders of the Union Oil Company are not taxed. A complete refutation of this assertion may be framed as follows: Every corporation of like class pays a similar tax upon its franchise, hence there is no discrimination. Individuals are not involved.

From what has been said it is evident that appellant's demurrer should have been sustained without leave to amend and judgment entered for the defendant.

Shenk, J., concurred.